IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**BEST DESIGNS, INC.,**
**DAN SHASTEEN, JIM SHASTEEN,**
**MARK SHASTEEN, and LYNDON**
**FORBY,**

**Plaintiffs,**

**v.**

**AMERICAN SEALANTS COMPANY, INC.,**
**JON C. WERNETTE, individually and as**
**co-administrator of the Estate of C. Michael**
**Wernette, JEAN WERNETTE, individually and**
**as co-administrator of the Estate of C. Michael**
**Wernette, MONICA WERNETTE, individually**
**and as co-administrator of the Estate of C. Michael**
**Wernette, AMERICAN SEALANTS NORTH**
**CENTRAL MARKETING, LLC, WILLIAM**
**MARTIN, and JAMES MICHAEL HALEY,**

**Defendants.**                                    **No. 12-1045-DRH**

### MEMORANDUM and ORDER

**HERNDON, Chief Judge:**

### Introduction and Background

Now before the Court are American Sealants Company, Inc. ("ASC"), Jon C.

Wernette, and Monica M. Wernette's motion to dismiss for lack of personal

jurisdiction, lack of venue, and dismissal for the sake of judicial economy (Doc.

15) and James Michael Haley's motion to dismiss for lack of personal

jurisdiction, for lack of venue and dismissal for the sake of judicial economy (Doc.

26).  Plaintiffs oppose both motions (Docs. 23 & 29).  Based on the following, the Court denies the motions.

On September 12, 2012, plaintiffs Best Designs, Inc. ("Best Designs"), Dan Shasteen, Jim Shasteen, Mark Shasteen, and Lyndon Forby filed a seven-count complaint against American Sealants Company, Inc. ("ASC"), Jon C. Wernette, individually and as co-administrator of the Estate of C. Michael Wernette, Jean A. Wernette, individually and as co-administrator of the Estate of C. Michael Wernette, Monica M. Wernette, individually and as co-administrator of the Estate of C. Michael Wernette, American Sealants North Central Marketing LLC, William Martin and James Michael Haley (Doc. 2).  The complaint contains claims for copyright infringement (Count I); false advertising under the Lanham Act (Count II); Kansas common law for unfair competition (Count III); violation of the Illinois deceptive trade practices act (Count IV); violation of Arkansas deceptive trade practices act (Count V); tortious interference (Count VI) and breach of contract option agreement (Count VII).

Best Designs is a marketer and distributor of tire sealants based in Caterville, Illinois.  Dan Shasteen, Jim Shasteen, Mark Shasteen and Lyndon Forby are Best Designs' executives.  ASC manufactures a tire sealant called "AmerSeal."  ASC is based in Clay Center, Kansas.

From 1990 to May 2012, Best Designs was in an exclusive marketing arrangement ("Exclusive Marketing and Sales Agreement") with ASC.  Under the agreement, Best Designs had the exclusive right to market and sell ASC's

products throughout the world.  When a customer wished to purchase AmerSeal, the customer placed its order with Best Designs.  Best Design would send a purchase order to ASC and instruct ASC where to ship the product.  ASC would manufacture, package and ship the product to the customer and send an invoice to Best Designs for the product shipped.  Best Design would invoice its customers, collect payment and pay ASC.  According to the complaint, ASC did not have any other substantial customer except for Best Designs.  Since 2005, ASC issued thousands of invoices to Best Designs in Illinois and Best Designs paid ASC millions of dollars for the tire sealant.

In November 2011, C. Michael Wernette, the sole owner of ASC, died. Thereafter, his siblings, Jon C. Wernette, Jean C. Wernette and Monica M. Wernette, were appointed as co-administrators of his estate and took over management of ASC.  Shortly thereafter, the relationship between the parties deteriorated.

In May 2012, Best Designs and ASC terminated the Exclusive Marketing and Sales Agreement.  Subsequently, Best Designs contracted with another manufacture of tire sealant and began selling the new products under the name, LiquiTube.  ASC began contacting Best Designs customers around the world to sell AmerSeal "factory direct" and through independent distributors, including defendants Haley and Martin.

On May 10, 2012, ASC and the Wernettes sued Best Designs, Dan Shasteen, Jim Shasteen, Mark Shasteen, Lyndon Forby, and former ASC

employee, Brent Craig, in the Twenty-First Judicial District Court for Clay County, Kansas, 12-CV-16.[1]  The Kansas lawsuit contains three counts relating to the parties' relationship prior to Michael Wernette's death: (1) declaratory judgment action that the Exclusive Marketing and Sales Agreement was terminated; (2) breach of contract alleging that Best Designs owed ASC for alleged past due invoices; and (3) a declaratory judgment action that an option agreement between Dan Shasteen, Jim Shasteen, Mark Shasteen and Lyndon Forby and C. Michael Wernetter – through which the purchases had a five year option to purchase ASC – was null and void.  On June 28, 2012, Best Designs, the Shasteens and Forby filed an answer in the Kansas lawsuit and asserted counterclaims for conversion and unjust enrichment relating to product labels they claim belong to Best Designs.  On September 6, 2012, ASC and the Wernettes in the Kansas lawsuit filed a motion to amend their complaint to add LiquiTube Industries, LLC ("LiquiTube") as a party and to add counts for violations of Kansas common law unfair competition against Best Designs and LiquiTube, violations of the Illinois deceptive trade practices act against Best Designs and LiquiTube, tortious interference against Best Designs and LiquiTube, for breach of fiduciary duty against Best Designs, and for misappropriation of trade secrets against Best Designs and LiquiTube.  On October 31, 2012, a day before the hearing on the motion to amend, the Shasteens, Forby and Best

---

[1] On October 19, 2012, the district court of Clay Center, Kansas dismissed with prejudice defendant Craig.

Designs removed the Kansas lawsuit to the U.S. District Court for the District of Kansas where it remains.

This case was filed on September 28, 2012 (Doc. 1). The complaint alleges that ASC and its distributors were infringing on Best Design's copyrights regarding certain product labels previously used and that ASC and its independent distributors were committing acts of unfair competition and falsely advertising, and tortiously interfering with Best Design's business expectancies. Thereafter, defendants filed the pending motions to dismiss. First, the moving defendants argue that the Court lacks personal jurisdiction because defendants' contacts with Illinois are insufficient to allow the Court to exercise general jurisdiction, and that plaintiffs have failed to sufficiently plead facts show that the claims actually "relate" or "arise out" of ASC's contacts with Illinois thereby conferring specific jurisdiction, Defendants argue that Jon C. Wernette, Monica Wernette and Haley have not sold or offered for sale of products in Illinois, nor do they conduct business in Illinois. They maintain that they have very limited to nonexistent contacts with the State of Illinois. Specifically, defendants contend that since the dissolution of the partnership between ASC and Best Designs in May 2012, ASC has had very few contacts with Illinois. Defendants maintain: "In fact, only four customers in Illinois have ordered tire sealant products from ASC and only two of those customers placed an order directly with ASC. The other two customers placed orders with independent sales representatives located outside of Illinois." Obviously, plaintiffs oppose the motions. As the motions are

ripe, the Court turns to the merits of the motions.

**<u>Motion to Dismiss Standard</u>**

When personal jurisdiction is challenged under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction over a defendant. *Purdue Research Found. v. Sanofi–Syntholabo, S.A.,* 338 F.3d 773, 782 (7th Cir.2003) (citing *Central States, S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp.,* 230 F.3d 934, 939 (7th Cir.2000)). If the issue of personal jurisdiction is raised by a motion to dismiss and decided on the written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. *Id.* Thus, the Court must "take as true all well-pleaded facts alleged in the complaint and resolve any factual disputes in favor of plaintiff." *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010)(citing *Purdue Research Found.*, 338 F.3d at 782).

Under Illinois law, the long-arm statute permits personal jurisdiction over a party to the extent allowed under the due process provisions of the Illinois and United States constitutions. 735 ILCS 5/2–209(c); *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 714 (7th Cir. 2002); *Central States, S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp.,* 230 F.3d 934, 940 (7th Cir. 2000). Therefore, whether the Court has jurisdiction over a defendant depends on whether such jurisdiction is permitted by federal and state constitutional standards.

The Illinois Constitution's due process guarantee, Ill. Const. art. I, § 2, permits the assertion of personal jurisdiction "when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins v. Ellwood*, 141 Ill.2d 244, 152 Ill.Dec. 384, 565 N.E.2d 1302, 1316 (Ill.1990).  When interpreting these principles, a court may look to the construction and application of the federal due process clause. *Id.*  In fact, the Seventh Circuit Court of Appeals has suggested that there is no operative difference between Illinois and federal due process limits on the exercise of personal jurisdiction.  *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002) (citing *RAR, Inc. v. Turner Diesel Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997)).  The Court sees nothing in this case indicating that in this particular situation the federal and state standards should reach a different result.  Therefore, if the contacts between the defendant and Illinois are sufficient to satisfy the requirements of federal due process, then the requirements of both the Illinois long-arm statute and the Illinois Constitution have also been met, and no other inquiry is necessary.

The Due Process Clause of the Fourteenth Amendment limits when a state may assert personal jurisdiction over nonresident individuals and corporations. *See Pennoyer v. Neff,* 95 U.S. 714, 733, 24 L.Ed. 565 (1877), *overruled on other grounds by Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). Under federal due process standards, a court can have personal

jurisdiction over a defendant only if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). The defendant must have purposefully established such minimum contacts with the forum state such that it "should reasonably anticipate being haled into court there," *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980), because it has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *Burger King Corp. v. Rudzewicz*, 474–75 (1985); *see J. McIntyre Mach., Ltd. v. Nicastro*, ——U.S. ——, ——, 131 S.Ct. 2780, 2788, 180 L.Ed.2d 765 (2011) (Kennedy, J., plurality opinion). In deciding whether exercising jurisdiction offends traditional notions of fair play and substantial justice, the Court may also consider "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Asahi Metal Indus. Co. v. Superior Court of Cal.,* 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

What this standard means in a particular case depends on whether the plaintiff asserts "general" or "specific" jurisdiction. Specific jurisdiction refers to jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 716 (7th Cir.

2002) citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn. 8, 9 (1984)). General jurisdiction, on the other hand, may exist even in suits that do not rise out of or relate to the defendant's contacts so long as the defendant has "continuous and systematic" contacts with the forum state. *Hyatt*, 302 F.3d at 713; *Helicopteros Nacionales*, 466 U.S. at 416.

## Analysis

Here, the Court finds that plaintiffs have made a prima facie showing that the Court has personal jurisdiction over all the moving defendants. From 1990 to 2012, Best Designs sent thousands of orders for product from customers to ASC. In response, ASC manufactured and shipped AmerSeal to customers in Illinois and around the world. ASC did none of its own direct marketing of products and passed all "leads on to Best Designs." The Court finds that there is general personal jurisdiction over ASC as in its response to the motion to dismiss it admits that during its partnership with Best Designs that less than 5% of the business orders were shipped to Illinois. It also admits that since the dissolution of the agreement that "only four customers in Illinois have ordered tire sealant products from ASC and only two of those customers placed an order directly with ASC. The other two customers placed orders with independent sales representatives located outside of Illinois." These business transactions form the basis of plaintiffs' claims for copyright infringement, unfair competition, false advertising and tortious interference. Moreover, since 2005, at least 5000 business transactions occurred between the parties wherein, ASC issued invoices

to Best Designs in Illinois and Best Design issued payment from Illinois to ASC. Furthermore, ASC shipped orders taken by Best Designs in Illinois. Thus, the Court finds that ASC is subject to general jurisdiction because of its pervasive and purposeful contacts with the State of Illinois.

Moreover, the Court finds that it has specific personal jurisdiction over ASC. Plaintiffs have plead that their claims arise out of ASC's conduct in Illinois including copyright infringement. Plaintiffs allege that "any and all AmerSeal products sold by Defendants *since* the termination of the Exclusive Marketing and Sales Agreement, have been marketed, sold and shipped by Defendants using BDI's copyrighted labels." Plaintiffs also allege that ASC has unlawfully transacted business by means of unfair competition and false advertising to customers in Illinois and all over the world in violation of the Lanham Act. As stated previously, defendants even admit that they sold tire sealant to Illinois customers in Illinois. Plaintiffs maintain that these products were marketed, sold and shipped to customers with Best Design's copyrighted labels. The Court concludes that this type of conduct is the type of contact and injury that forms the basis of plaintiffs' claims.

The same reasoning regarding specific personal jurisdiction above applies to defendants Jon Wernette, Monica Wernette and Haley. Plaintiffs allege that these defendants unlawful conduct within Illinois included copyright infringement. Plaintiffs allege that the infringing products were marketed, sold and shipped by defendants to consumers in Illinois. Furthermore, the Wernettes are corporate

officers of ASC.   Also, Plaintiffs allege that these defendants have unlawfully transacted business in Illinois by means of unfair competition and false advertising to customers in violation of the Lanham Act and state law governing unfair competition.

After reviewing the record, the Court concludes at this stage of the litigation that plaintiffs have sustained their burden of establishing that the Court has personal jurisdiction over defendants.   Further, the Court finds that exercising personal jurisdiction over these defendants does not offend due process.

Defendants also contend that the Kansas law divests this Court of jurisdiction over the claims that are directed at the Wernettes as administrators of Michael Wernette's estate.   Defendants maintain that these claims must be raised in Kansas probate court.   Plaintiffs counter that Kansas law only directs that such claims be "legally exhibited" in the probate action, by requiring the claimant make a demand upon the estate and that has been done here in that a lawsuit is a sufficient demand.   The Court agrees with plaintiffs.   Section 59-2238(2) and (3) of the Kansas statutes provides:

> (2)Any action commenced against any executor or administrator after the death of the decedent shall be considered a demand legally exhibited against such estate from the time of serving the original process on such executor or administrator.
> (3) The judgment creditor shall file a certified copy of the judgment obtained in an action such as described in subsection (1) or (2) of this section in the proper district court within thirty (30) days after said judgment becomes final.

K.S.A. § 59-2238(2) & (3).   The Wernettes were both served with process in this

case and if judgment is entered, plaintiffs must register the judgment with the probate court.  The Court has jurisdiction over these claims.

Next, defendants argue that Counts I, III and VII are compulsory counterclaims to the Kansas case and should be dismissed to avoid duplication. Plaintiffs argue that the claims in the Kansas case occurred while the parties were still doing business *before* the Exclusive Marketing Sales Agreement was terminated and that the claims in this case arise out of transactions that occurred *after* the Kansas case was filed.  The Court agrees with plaintiff in that the claims for copyright infringement, unfair competition or breach of contract had not yet occurred or was not known to plaintiffs when they answered the Kansas Case. Thus, the Court denies the motion on this basis.

Lastly, defendants move to dismiss the case for improper venue or alternatively to transfer the case to the District of Kansas.  Defendants maintain that the Court lacks jurisdiction over each defendant and that plaintiffs have failed to show that venue is proper.  Defendants maintain that plaintiffs have not alleged that any of the acts underlying the claim actually occurred in the Southern District of Illinois.  Plaintiffs counter that defendants may be found in Illinois. The Court agrees with plaintiffs.

Rule 12(b)(3) allows a party to move for dismissal of an action when it is filed in an improper venue.  When a defendant challenges venue, the plaintiff bears the burden of establishing that venue is proper. *See Int'l Travelers Cheque Co. v. BankAmerica Corp.*, 660 F.2d 215, 222 (7th Cir. 1981).  Factual conflicts

are resolved in favor of the plaintiff, and the Court may draw reasonable inferences from those facts. *Id*. When venue is improper, the Court "shall dismiss [the case], or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

As stated previously, the Court finds that defendants may be found in Illinois. The Court concludes that sufficient events took place in Illinois to make venue proper here. Thus, the Court denies the motion to dismiss on grounds of improper venue and the Court declines to transfer the case to the District of Kansas as defendants have not shown that the District of Kansas is clearly a more convenient forum.

<u>Conclusion</u>

Accordingly, the Court **DENIES** defendants' motions to dismiss (Docs. 15 & 26).

**IT IS SO ORDERED.**

Signed this 26th day of August, 2013.

Digitally signed by
David R. Herndon
Date: 2013.08.26
15:54:32 -05'00'

**Chief Judge**
**United States District Court**

Page **13** of **13**